ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

APR 07 2010

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

CRAIG SMALLWOOD
91-623 Papipi Road
Ewa Beach, Hawaii 96706
Ph: (808)689-6747

Plaintiff Pro Se

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CRAIG SMALLWOOD,<br><br>          Plaintiff,<br><br>     v.<br><br>NCSOFT CORPORATION and<br>NC INTERACTIVE, INC.,<br><br>          Defendants. | Civil No. 09-00497 ACK-BMK<br><br>SECOND AMENDED COMPLAINT;<br>EXHIBIT 1; SUMMONS;<br>CERTIFICATE OF SERVICE |

<u>SECOND AMENDED COMPLAINT</u>

Plaintiff CRAIG SMALLWOOD for complaint against

Defendants, alleges and states the following:

<u>PARTIES</u>

1.   At all times relevant herein, plaintiff was a

citizen of the United States and resident of and domiciled in

the State of Hawaii.

2.   Defendant NCsoft Corporation ("NCsoft") is a

South Korean corporation, engaged in producing, marketing,

selling, distributing or licensing the computer game "LineageII" throughout the United States and in the State of Hawaii.

3.     Defendant NC INTERACTIVE, INC. ("NCI") is a Texas corporation with its principal place of business in Austin, Texas, and a wholly owned subsidiary of NCSoft Corporation.

4.     On information and belief, NCI entered into licensing agreement/s with plaintiff for plaintiff's use of LineageII in the State of Hawaii.

5.     Whenever it is alleged in this Complaint that NCSoft or NCI did or failed to do any act, it is meant that defendants or either of them, performed or participated in the act, or failed to do so, or, that defendant's officer/s, agent/s or employee/s performed or participated in the act, or failed to do so, on behalf of and under the authority of defendant NCSoft and/or defendant NCI.

<u>JURISDICTION AND VENUE</u>

6.     Plaintiff repeats, realleges, and incorporates paragraphs 1 through 5 above as if expressly set forth fully hereinafter.

7.     Jurisdiction is based on diversity of citizenship of the parties.

8.     The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, specified by 28 U.S.C. § 1332.

9.   The United States District Court for the District of Hawaii is a proper venue for this action as a substantial part of the events or omissions giving rise to this action occurred in the State of Hawaii.

## STATEMENT OF FACTS

10.   Plaintiff repeats, realleges, and incorporates paragraphs 1 through 9 above as if expressly set forth fully hereinafter.

11.   Defendants designed, developed, tested, manufactured, inspected, marketed, promoted, advertised, sold, licensed for use, and/or distributed world wide, various role-playing internet interactive computer games to the public, including the game "LineageII."

12.   In 2004/2005, plaintiff opened three accounts with NCSoft, thereby becoming licensed to play LineageII.

13.   The accounts were paid for by charge card whereby the payments were made/deducted three months in advance of play/use, pursuant to defendants' policy.

14.   Plaintiff played LineageII during the years 2004 to 2009, investing 20,000+ hours of his time and achieving great success in accumulating game points with his characters.

15.   Plaintiff experienced great feelings of euphoria and satisfaction from persistent play, as did other users of LineageII and similar computer games.

16.   Unknowingly, plaintiff became psychologically dependent and addicted to playing LineageII.

17.   During the years that plaintiff opened accounts and played LineageII, the phenomena of psychological dependence and addiction to playing computer games was recognized by and known to defendants and other members of the industry.

18.   During plaintiff's period of play, defendants never gave plaintiff or other LineageII players, any notice or warning of the danger of psychological dependence or addiction from continued play.

19.   LineageII was played around the world, was widely popular for a period of time, and defendants enjoyed huge profits from the game.

20.   To build its reputation and increase profits, defendants have to continually create new games or game versions, and sell more licenses.

21.   In 2009, defendants began selling/licensing a new computer game, "Aion," which went on to achieve great success as well.

22.   One method of promoting Aion, was to lock players out from the older game LineageII, thus creating popularity and publicity for the newer game Aion, a larger amount of users/licensees, and increased profits for defendants.

23.   In September 2009, plaintiff attempted to log

into and play LineageII and discovered that he had been locked out of the game, i.e., that defendants had "banned" him from further play of the game.

24.   Plaintiff further discovered that he had been locked out on all accounts belonging to his IP address.

25.   Prior to being banned, plaintiff had gotten no notice or warning from defendants that he would be banned or was in danger of being banned.

26.   By being banned, plaintiff could no longer play the game or create any new account/s to play the game, even though he had money on account to continue with play.

27.   Upon being banned, plaintiff realized that he had an uncontrollable need to continue playing LineageII, a psychological dependence on continued play, and an addiction to the game.

28.   Plaintiff attempted to contact defendants to rectify the situation and get back in the game.

29.   Plaintiff telephoned several times, emailed twice, and sent three letters, but defendants refused to lift the ban and reinstate play.

30.   Although it had been easy to contact the company to open new accounts (required to buy more players to succeed in the game), there was a maze of purposeful obstruction to receive any information on why he was locked out, including responses

that the departments he was contacting could not provide him any explanation, and a bogus "ticketing process".

31.  Through these same communications, plaintiff also requested a refund for the play time still left on existing accounts, automatic deductions from charge cards having been last made on 7/31/09, 8/3/09 and 8/17/09 which payments should have covered play through November 2009 because payments were deducted for three months of play at-a-time.

32.  Plaintiff was banned around mid-September 2009, and had approximately 1 1/2 months of play time remaining on account/s, or around $65.00 that defendants refused to return or refund.

33.  Defendants unlawfully retained plaintiff's money on account, for playtime that was intentionally withheld and denied.

34.  When plaintiff finally reached someone on the phone who could talk about the problem, he was told that the reason for the ban was that plaintiff was engaging in an elaborate scheme to create real money transfers.

35.  In October 5, 2009 emails from NCSoft, plaintiff was told that:

> This mail is to inform you that your account was found violating the User Agreement and/or Rules of Conduct by being involved in RMT (real money transaction) networks, this can include but is not limited to:
>
> - Buying/selling items,

- Buying/selling adena or assisting with the generation for adena selling networks
- Bought/sold accounts,
- Having your character power-leveled
- Et Cetera...

As a result of this violation of the EULA and/or Rules of Conduct, this and all related accounts have been permanently closed. These account(s) will no longer be accessible and can never be reactivated.

We believe it is in the best interest of the Lineage II service and for our remaining customers that you no longer access the service. The decision to terminate the account(s) is final and not up for review.

       *        *        *

Accounts belonging to you were found to have engaged in elaborate schemes to support and contribute to RMT networks.

The support team will not disclose the methods used to identify the activities discovered on these accounts which led to the termination of the accounts. Doing so could allow you or other RMT networks to potentially circumvent future investigations by the support team. However, we are absolutely confident in the evidence gathered to permanently close these and all associated accounts.

36.   A true and complete copy of the NCSoft email exchange with plaintiff on October 5, 2009 and other dates, is attached hereto and incorporated by reference herein as Exhibit 1.

37.   Defendant's explanation for banning plaintiff from the game was phony and fraudulent as Plaintiff had not and has never engaged in any scheme to make real money transfers, or made any real money transfers.

38.   The October 5, 2009 emails essentially accused plaintiff of federal trademark, patent, and copyright

infringement, and also implicated money laundering and funneling money to Communist countries.

39.   These emails were false as respects plaintiff.

40.   Defendants knew or should have known that plaintiff was not involved with or guilty of federal trademark, patent, and copyright infringement, money laundering, or funneling money to Communist countries.

41.   Defendants' purported "investigation" of plaintiff's account/s was an inadequate basis for banning plaintiff's account/s.

42.   Defendants knew or should have known that its "investigation" of plaintiff's account/s was an inadequate basis for banning plaintiff's account/s.

43.   These false allegations involving plaintiff's account/s were disseminated to and published to other licensees of "related accounts," thereby disparaging plaintiff and subjecting him to possible investigation by authorities in communist countries where a related account was played.

44.   When plaintiff started playing LineageII, the user agreement or rules did not provide for the banning of "related accounts" where a single player had been identified for serious rules violation such as real monetary transfers.

45.   A User Agreement is displayed when one logs into the game, but the rules therein were frequently changed by

defendants who made no attempt to call the players' attention to the changes.

45.  One of the design features of LineageII, is that players have to play in groups to continue to succeed in the game, but by doing so, the player is unfairly banned for the activity of another player, i.e., a related account, such as what apparently happened in plaintiff's case.

47.  Defendants provided plaintiff no warning, means or procedure for investigating the integrity of related accountholders before teaming up with them during game play.

48.  Defendants provided plaintiff no way to appeal the decision to ban his account.

49.  Plaintiff should not be responsible for or penalized for serious rules violations of others.

50.  Plaintiff should not be responsible for or penalized by, such a major rule revision that had not been in place when he opened his accounts.

51.  LineageII, like other computer games, provides Game Masters which are supposed to police the players and enforce the game rules, especially the rules that ensure fairness for the players, such as the absolute prohibition of using third-party automatic play machines (known as "botting").

52.  The game rules in LineageII against botting or other game rule violations, were not enforced fair and square,

and the "banning purges" that resulted in plaintiff's loss of his money on account/s, were defendants' concealed methods to promote Aion and increase their profits.

53.  According to NCSoft's November 2, 2009 publication "**3Q 2009 Earnings Release**," NCSoft "[a]chieved record high quarterly sales and operating income thanks to AION's global launch":





### 2. Sales Breakdown

Proportion of overseas sales surged due to AION's sales in Japan, Taiwan, US and Europe

53.   Defendants' have an insidious pattern and practice of allowing botting and of banning accounts, for purposes of their own profit-making.

54.   To this day, plaintiff has a compulsive urge and need to play LineageII, notwithstanding all the psychological and emotional harm it has caused him.

55.   To this day, plaintiff has received no warning, notice, or advice from defendants as to the danger of addiction from playing LineageII or other computer games.

56.   Plaintiff is a military veteran suffering from a

100% service connected disability.

57.   NCSoft has used the FBI and instituted trademark infringement actions in the past.

58.   Defendants' false allegation that I was involved in real money transfers, creates the possibility of my being investigated or prosecuted for federal felonies which seriously frightens me as I have been wrongly accused and jailed in the past, and because Communist authorities could become involved if they intercept the email published in China.

59.   As a direct result of using LineageII and defendants' acts and omissions, plaintiff has suffered extreme and serious emotional distress and depression, and has been unable to function independently in usual daily activities such as getting up, getting dressed, bathing, or communicating with family and friends.

60.   Plaintiff suffered psychological damage of a heightened state of anxiety, severe paranoia causing an inability to participate in outdoor activities, disassociate states causing Plaintiff to lose track of time and severe hallucinations.

61.   As a direct result of using LineageII and defendants' acts and omissions, plaintiff required three weeks of hospitalization and requires treatment and therapy three times a week, of an unknown duration but estimated to last

several years, and cost around $125,000.00 to $250,000.00 for medical bills, approximately $5000.00 for transportation expenses to/from receive treatment, and to give rise to additional related expenses.

62.   Some of his treatment will likely not be covered by medical insurance and plaintiff will sustain out-of-pocket losses for this treatment, in addition to at least $5000.00 in gas/vehicle expense for transportation to and from treatment.

63.   Plaintiff would not have bought and played LineageII if he had been aware that he would be subjected to the dishonesty and unfairness described above, or that he would become addicted to the game.

### COUNT I – MISREPRESENTATION/DECEIT

64.   Plaintiff repeats, realleges, and incorporates paragraphs 1 through 63 above as if expressly set forth fully hereinafter.

65.   Defendants made false representations to plaintiff, in connection with his purchase and use of LineageII, respecting automatic payment plans, complaint and refund procedures, "fair" Game Masters, botting, banning, and the danger of addiction and avoidance thereof.

66.   Defendants falsely related that:

a.   the 3-month automatic payment plan on plaintiff's

several accounts, was for plaintiff's benefit (2004/2005 when plaintiff opened his accounts with NCSoft)when in fact, the 3-month advance payment plan was intentionally used by defendants a means to retain plaintiff's money after banning him in mid-September 2009, and the money of other players it chose to ban in its mass purges

b.   LineageII was a fair game (by employing Game Masters to create a false appearance of fairness in LineageII, when in fact, in plaintiff's play experience, the game masters did not promote a fair game because they favored and disfavored various players without just cause)

c.   LineageII was a safe product (by showing during game play, inadequate advice to plaintiff as to "taking breaks" from play, but not disclosing that lengthy breaks in play were necessary to avoid addiction to the game)

d.   botting was not allowed, when in fact, it was rampantly obvious during plaintiff's game play but nothing was done about it until defendants banned players for purposes of their profits and not to provide a fair playing field to plaintiff and other game players)

67.   NCSoft changed the terms of use whereby plaintiff was banned from further play in mid-September 2009 due to actions in related accounts, whereafter plaintiff met with firm resistance from defendants when he tried to investigate the ban,

and after countless wasted hours attempting to discuss the matter with defendants, plaintiff was afforded no redress, as illustrated in Exhibit 1.

68.  Plaintiff would not have opened the LineageII accounts and persisted in play, had he not been misled and deceived by defendants in the manner described herein.

69.  Defendants expected plaintiff and others to rely upon and to be duped by these deceptions.

70.  Plaintiff did rely upon defendants' deceptions and invested his time and money that would have gone elsewhere, had plaintiff known of the deception.

71.  As a direct result of defendants' acts and omissions, plaintiff suffered substantial pecuniary loss including medical and related expense, loss of monies paid on accounts, and other damages in the amount of $250,000.00.

COUNT II - UNFAIR AND DECEPTIVE TRADE PRACTICES

72.  Plaintiff repeats, realleges, and incorporates paragraphs 1 through 71 above as if expressly set forth fully hereinafter.

73.  The actions of defendants constituted unfair and deceptive trade practices against plaintiff, within the meaning of Chapter 480 of the Hawaii Revised Statutes, and Sections 480-2 and 480-13 thereof.

74.  Plaintiff was a consumer of defendants' products

and services for his personal use, including the game LineageII.

75.   Defendants are merchants within the meaning of Chapter 480, Hawaii Revised Statutes.

76.   Plaintiff sustained injury to his business or property as a direct result of defendants acts and practices, including but not limited to the following:

a.   fraudulent concealment of the reason for the 3-month automatic payment plan

b.   fraudulent concealment that the Game Masters would not act fair and square to all players

c.   fraudulent concealment of the addictive quality of LineageII

d.   fraudulent concealment respecting policies towards botting and banning

e.   unfair and deceptive policies respecting automatic payment plans, complaint and refund procedures, botting, and banning.

77.   Defendants' acts and omissions are unfair and deceptive practices that offend public policy and are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers like plaintiff.

78.   As a direct result of defendants' unfair and deceptive practices, plaintiff suffered substantial pecuniary loss including medical and related expense, loss of monies paid

on accounts, and other damages in the amount of $250,000.00.

79.   In September and October 2009, plaintiff made demand for refund and remedy from defendants, but defendants refused to grant relief, as illustrated in Exhibit 1 hereto.

80.   The use and employment of the unfair and deceptive practices set forth herein were willful and knowing violations of law.

81.   Defendants' refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the acts and practices were in violation of law.

82.   Plaintiff is entitled to treble compensatory damages and a reasonable award for attorney's fees, if any should be incurred, on his claim.

### COUNT III - DEFAMATION/LIBEL/SLANDER

83.   Plaintiff repeats, realleges, and incorporates paragraphs 1 through 82 above as if expressly set forth fully hereinafter.

84.   On October 5, 2009, defendants made false and defamatory statements concerning plaintiff, including those contained in Exhibit 1 hereto.

85.   Defendants published the false and defamatory statements to other players, by email, on or around October 5, 2009.

86.   Defendants were negligent in their

"investigation" of real money transfers, and negligent in publishing the accusation thereof against plaintiff.

87.  Defendants were not privileged and had no legal excuse to engage in such acts and omissions against plaintiff.

88.  As a direct result of the aforementioned acts and omissions, plaintiff suffered substantial and actual injuries and damages, consisting of physical and psychic injury, wherefore plaintiff seeks damages for harm to his reputation.

### COUNT IV - NEGLIGENCE

89.  Plaintiff repeats, realleges, and incorporates paragraphs 1 through 88 above as if expressly set forth fully hereinafter.

90.  Plaintiff's addiction to LineageII and other injuries and damages, were a direct result of the negligent conduct of defendants as follows:

a.   defendants acted with negligence in designing, developing, manufacturing, inspecting, testing, marketing, advertising, promoting, selling, distributing, maintaining, revising, servicing, administrating, and overseeing LineageII.

b.   defendants acted with negligence in failing to warn or instruct or adequately warn or adequately instruct plaintiff and other players of LineageII of its dangerous and defective characteristics, and of the safe and proper method of using the game.

c.   defendants acted with negligence in placing and keeping LineageII in the channels of trade when they knew or should have known said product to be dangerous and defective, and in a dangerous and defective condition, and negligently placed LineageII in the channels of trade in a manner defendants foresaw or in the exercise of reasonable care should have foreseen would probably carry said product into contact with persons such as plaintiff who were ignorant of its dangers an defects, and defendants acted with negligence in failing to use reasonable care to prevent injury to such persons including plaintiff.

d.   Defendants acted with negligence in their methods of business operation, including but not limited to their acts and omissions respecting automatic payment plans, complaint and refund procedures, "fair" Game Masters, botting and banning, and lack of advice as to addiction and its avoidance, as described herein.

91. Defendants acts and omissions were in violation of the duties defendants owed plaintiff to sell and maintain safe product, to protect him from unreasonable risk, and to refrain from negligent business methods of operation, which duties were breached by defendants' negligence.

92.  Plaintiff relies upon the doctrine of <u>res ipsa loquitur</u> as a basis of liability.

93.   Wherefore, defendants owe plaintiff the sum of $250,000.00 exclusive of interests and costs.

## COUNT V  - GROSS NEGLIGENCE

94.   Plaintiff repeats, realleges, and incorporates paragraphs 1 through 93 above as if expressly set forth fully hereinafter.

95.   Plaintiff's addiction to LineageII and other injuries and damages, were a direct result of the grossly negligent conduct of defendants as follows:

a.   defendants acted with gross negligence in designing, developing, manufacturing, inspecting, testing, marketing, advertising, promoting, selling, distributing, maintaining, revising, servicing, administrating, and overseeing LineageII.

b.   defendants acted with gross negligence in failing to warn or instruct or adequately warn or adequately instruct plaintiff and other players of LineageII of its dangerous and defective characteristics, and of the safe and proper method of using the game.

c.   defendants acted with gross negligence in placing and keeping LineageII in the channels of trade when they knew or should have known said product to be dangerous and defective, and in a dangerous and defective condition, and willfully, wantonly, recklessly and grossly negligently placed LineageII n the channels of trade in a manner defendants foresaw or in the

exercise of reasonable care should have foreseen would probably carry said product into contact with persons such as plaintiff who were ignorant of its dangers an defects, and defendants acted with gross negligence in failing to use reasonable care to prevent injury to such persons including plaintiff.

d.   Defendants acted with gross negligence in their methods of business operation, including but not limited to their acts and omissions respecting automatic payment plans, complaint and refund procedures, "fair" Game Masters, botting, banning, and lack of advice as to addiction and its avoidance, as described herein.

96.   Defendants acts and omissions were in violation of the duties defendants owed plaintiff to sell and maintain safe product and to protect him from unreasonable risk, and to refrain from grossly negligent business methods of operation, which duties were breached by defendants' gross negligence.

97.   Wherefore, defendants owe plaintiff the sum of $3,000,000.00 exclusive of interests and costs.

COUNT VI  - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

97.   Plaintiff repeats, realleges, and incorporates paragraphs 1 through 96 above as if expressly set forth fully hereinafter.

98.   Plaintiff's addiction to LineageII and other injuries and damages, were a direct result of the intentional,

21

reckless, and grossly negligent conduct of defendants as follows:

a.   defendants acted intentionally and recklessly in designing, developing, manufacturing, inspecting, testing, marketing, advertising, promoting, selling, distributing, maintaining, revising, servicing, administrating, and overseeing LineageII.

b.   defendants acted intentionally and recklessly in failing to warn or instruct or adequately warn or adequately instruct plaintiff and other players of LineageII of its dangerous and defective characteristics, and of the safe and proper method of using the game.

c.   defendants acted with  intentionally and recklessly in placing and keeping LineageII in the channels of trade when they knew or should have known said product to be dangerous and defective, and in a dangerous and defective condition, and negligently placed LineageII in the channels of trade in a manner defendants foresaw or in the exercise of reasonable care should have foreseen would probably carry said product into contact with persons such as plaintiff who were ignorant of its dangers an defects, and defendants acted with negligence in failing to use reasonable care to prevent injury to such persons including plaintiff.

d.   Defendants acted intentionally and recklessly in their

methods of business operation, including but not limited to

their acts and omissions respecting automatic payment plans,

complaint and refund procedures, "fair" Game Masters, botting,

banning, and lack of advice as to addiction and its avoidance,

as described herein.

99. Defendants' acts and omissions were in violation

of the duties defendants owed plaintiff and were intentional,

reckless, and outrageous.

100. As a direct result of the intentional infliction

of emotional distress by defendants, plaintiff has experienced

severe anxiety, worry, fear, stress, and extreme mental and

emotional distress and is entitled to recover damages from

defendants in the amount of $3,000,000 therefore.

COUNT VII  - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

101. Plaintiff repeats, realleges, and incorporates

paragraphs 1 through 100 above as if expressly set forth fully

hereinafter.

102. Plaintiff's addiction to LineageII and other

injuries and damages, were a direct result of the negligent

conduct of defendants as follows:

a.    defendants acted negligently in designing, developing,

manufacturing, inspecting, testing, marketing, advertising,

promoting, selling, distributing, maintaining, revising,

servicing, administrating, and overseeing LineageII.

23

b.    defendants acted negligently in failing to warn or instruct or adequately warn or adequately instruct plaintiff and other players of LineageII of its dangerous and defective characteristics, and of the safe and proper method of using the game.

c.    defendants acted negligently in placing and keeping LineageII in the channels of trade when they knew or should have known said product to be dangerous and defective, and in a dangerous and defective condition, and negligently placed LineageII in the channels of trade in a manner defendants foresaw or in the exercise of reasonable care should have foreseen would probably carry said product into contact with persons such as plaintiff who were ignorant of its dangers and defects, and defendants acted with negligence in failing to use reasonable care to prevent injury to such persons including plaintiff.

d.    Defendants acted negligently in their methods of business operation, including but not limited to their acts and omissions respecting automatic payment plans, complaint and refund procedures, "fair" Game Masters, botting, banning, and lack of advice as to addiction and its avoidance, as described herein.

103. Defendants acts and omissions were in violation of the duties defendants owed plaintiff.

104. As a direct result of the negligent infliction of emotional distress by defendants, plaintiff has experienced severe anxiety, worry, fear, stress, and extreme mental and emotional distress and is entitled to recover damages from defendants in the amount of $3,000,000 therefore.

## COUNT VIII  - PUNITIVE DAMAGES

105. Plaintiff repeats, realleges, and incorporates paragraphs 1 through 104 above as if expressly set forth fully hereinafter.

106. Defendants acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some willful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences The aforesaid acts, omissions and conduct of defendants were intentional, reckless, and/or malicious, and in conscious and reckless disregard of plaintiff's rights and interests.

107. As a direct result thereof, plaintiff is entitled to recover punitive damages against defendants in the amount of $9,000,000.00.

## PRAYER FOR RELIEF

Wherefore, plaintiff CRAIG SMALLWOOD prays for judgment against defendants NCSOFT CORPORATION and NC

INTERACTIVE, INC., jointly and severally, as follows:

1. Compensatory/special damages of medical and related expense, in the amount of $250,000 for past, present, and future treatment and related expenses; refund for unpaid time of approximately $65.00; and other monetary damages.

2. Treble compensatory damages pursuant to 480-13 of the Hawaii Revised Statutes.

3. General damages in the amount of $250,000.00.

4. Punitive damages in the amount of $9,000,000.00 for all claims to which said damages attach.

5. Pre-judgment interest.

6. Reasonable attorney's fees and costs.

7. Such legal or equitable relief which the court deems proper and just.

Dated: Honolulu, Hawaii, __April 7, 2010_____.


CRAIG SMALLWOOD
91-623 Papipi Road
Ewa Beach, Hawaii 96706
Ph: (808)689-6747
Plaintiff Pro Se