IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

CRAIG SMALLWOOD,                    )    Civ. No. 09-00497 ACK-BMK
                                    )
        Plaintiff,                  )
                                    )
    v.                              )
                                    )
NCSOFT CORPORATION,                 )
NC INTERACTIVE, INC.,               )
                                    )
        Defendants.                 )
_____     )

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

#### PROCEDURAL BACKGROUND

On October 19, 2009, pro se Plaintiff Craig Smallwood ("Plaintiff") filed a Complaint ("Complaint") against NCSOFT. Although Plaintiff named only "NCSOFT" in the caption on his original complaint, two NCsoft entities have appeared in this action, Defendants NC Interactive Inc. and NCsoft Corporation, both of whom are named in the Second Amended Complaint ("Defendants").

On October 29, 2009, this Court sua sponte dismissed Plaintiff's Complaint for lack of subject matter jurisdiction. Order Dismissing Plaintiff's Complaint With Leave to Amend, dated Oct. 29, 2009 ("10/29/09 Order"). The Court held that diversity jurisdiction had not been properly alleged because Plaintiff had failed to allege his own citizenship and the citizenship of

NCsoft's North America affiliate.  10/29/09 Order at 5-6.  The Court granted Plaintiff twenty (20) days from the date the Order was filed to file an amended complaint that would meet the jurisdictional requirements.

Plaintiff filed an amended complaint on November 13, 2009 ("Amended Complaint").  The Amended Complaint appeared to be the same as the Complaint, but for the addition of a paragraph at the beginning asserting citizenship.

On November 23, 2009, Defendants NC Interactive Inc. and NCsoft Corp. filed a motion to dismiss the Amended Complaint. On February 26, 2010, the Court dismissed Plaintiff's Amended Complaint with leave to amend.  Specifically, the Court (1) denied Defendants' Motion to Dismiss based upon Fed. R. Civ. P. 12(b)(1) lack of subject matter jurisdiction; (2) granted Defendants' Motion to Dismiss on the basis of failure to plead fraud in compliance with Fed. R. Civ. P. 9(b); (3) granted Defendants' Motion to Dismiss Plaintiff's Intentional Infliction of Emotional Distress and Defamation claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6); and (4) dismissed the Amended Complaint without prejudice and with leave to amend.

On April 7, 2010, Plaintiff filed a Second Amended Complaint.  On April 21, 2010, Defendants filed a motion to dismiss the Second Amended Complaint ("Motion to Dismiss" or "Motion").  Plaintiff filed an opposition on June 29, 2010

("Opposition"), and a Supplemental Memorandum in Opposition on July 1, 2010 ("Supplemental Memorandum"). Defendants filed a reply on July 6, 2010 ("Reply"). The Court held a hearing on Defendants' Motion on July 19, 2010.

At the hearing, the Court requested supplemental briefing on the effect of the Texas Deceptive Trade Practices and Consumer Protection statute (the "Texas Act") on this case. On July 29, 2010, both parties submitted the requested supplemental briefing ("Plaintiff's Second Supplemental Mem." and "Defendant's Supplemental Mem."). Doc. Nos. 33 & 34.

## FACTUAL BACKGROUND[1]

Plaintiff's Second Amended Complaint alleges the following. Defendants designed and distributed interactive role playing internet games to the public, including the game "Lineage II." Second Am. Compl. ¶ 11. In 2004 or 2005, Plaintiff opened three accounts, thereby becoming licensed to play Lineage II. Id. ¶ 12. The accounts were paid for by charge card, three months in advance. Id. ¶ 13. Plaintiff played Lineage II from 2004-2009 for over 20,000 hours. Id. ¶ 14. Plaintiff experienced great feelings of euphoria and satisfaction from persistent play, as did other users of Lineage II. Id. ¶ 15.

---

[1] The facts as recited in this Order are for the purpose of disposing of this motion and are not to be construed as findings of fact that the parties may rely on in future proceedings in this case.

Plaintiff became psychologically dependent and addicted to playing Lineage II. Id. ¶ 16. During the years that Plaintiff played Lineage II, the phenomena of psychological dependence and addiction to playing computer games was recognized by and known to Defendants. Id. ¶ 17. Defendants never gave Plaintiff any notice or warning of the danger of psychological dependence or addiction from continued play. Id. ¶ 18.

Plaintiff further alleges that "to build its reputation and increase profits, defendants have to continually create new games or game versions, and sell more licenses." Id. ¶ 20. Thus, in 2009, Defendants began selling and licensing a new computer game, "Aion," which was quite successful. Id. ¶ 21. Plaintiff alleges that "[o]ne method of promoting Aion, was to lock players out from the older game Lineage II, thus creating popularity and publicity for the newer game Aion, a larger amount of users/licensees, and increased profits for [Defendants.]" Id. ¶ 22.

In September 2009, Plaintiff discovered that he had been "locked out of the game, i.e., that defendants had 'banned' him from further play of the game." Id. ¶ 23. Plaintiff alleges he received no warning that he was in danger of being banned or had been banned and that he was banned from all accounts belonging to his internet protocol ("IP") address. Id. ¶¶ 24-25.

Plaintiff alleges that he made numerous attempts to

4

contact Defendants to determine why he was banned, but that "there was a maze of purposeful obstruction to receive any information on why he was locked out." Id. ¶¶ 28-30.

Plaintiff alleges that he pre-paid for access to his accounts and had approximately one-and-a-half months of access left at the time his accounts were banned. Id ¶ 31. Plaintiff alleges that "Defendants unlawfully retained plaintiff's money on account [valued at $65], for playtime that was intentionally withheld and denied." Id. ¶¶ 32-33.

Plaintiff alleges that Defendants told him he was banned from the game for engaging in an elaborate scheme to create real money transfers. Id. ¶ 34. Plaintiff alleges that NCSOFT sent him an email to that effect on October 5, 2009, which Plaintiff attaches to the Second Amended Complaint. Id. ¶ 35-36. Plaintiff denies ever being involved in any scheme to make real money transfers or making any real money transfers. Id. ¶ 37-40.

Plaintiff also asserts that there are Game Masters in Lineage II who are supposed to ensure fairness, but that the game rules were not enforced fair and square. Id. ¶ 51-52. Plaintiff alleges that Defendant conducted "banning purges," which were "defendants' concealed methods to promote Aion and increase their profits." Id. ¶ 52.

Plaintiff asserts that he continues to this day to have a compulsive urge and need to play Lineage II and that he has

never received any warning, notice, or advice from Defendants as to the danger of addiction from playing Lineage II.  <u>Id.</u> ¶¶ 54-55.

Plaintiff alleges that as a direct result of using Lineage II and Defendants' acts and omissions, he has suffered extreme and serious emotional distress and depression, he has been unable to function independently, he has suffered psychological trauma, he was hospitalized, and he requires treatment and therapy three times a week.  <u>Id.</u> ¶¶ 59-61.

In summary, Plaintiff alleges that he "would not have bought and played Lineage II if he had been aware that he would be subjected to the dishonesty and unfairness described above, or that he would become addicted to the game."  <u>Id.</u> ¶ 63.

Plaintiff sets forth eight counts: (I) Misrepresentation/Deceit; (II) Unfair and Deceptive Trade Practices; (III) Defamation/Libel/Slander; (IV) Negligence; (V) Gross Negligence; (VI) Intentional Infliction of Emotional Distress; (VII) Negligent Infliction of Emotional Distress; and (VIII) Punitive Damages.

<u>**LEGAL STANDARD**</u>

**I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction**

A court's subject matter jurisdiction may be challenged under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). "A party invoking the federal court's jurisdiction has the burden

of proving the actual existence of subject matter jurisdiction."
See Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).

On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

"The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987). When ruling on a jurisdictional motion involving factual issues which also go to the merits, the moving party "should prevail only if the material jurisdictional

facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Casumpang v. Int'l Longshoremen's & Warehousemen's Union</u>, 269 F.3d 1042, 1060-61 (9th Cir. 2001)

The Court has diversity jurisdiction in cases involving claims greater than $75,000 and that are either between citizens of different states or citizens of a state and citizens or subjects of a foreign state pursuant to 28 U.S.C. § 1332(a)(1)-(2). To show state citizenship for diversity purposes a party must (1) be a citizen of the United States, and (2) be domiciled in the state. <u>Kantor v. Wellesley Galleries, Ltd.</u>, 704 F.2d 1088, 1090 (9th Cir. 1983).

Generally, the amount in controversy is determined from the face of the pleadings. The sum claimed by the plaintiff controls so long as the claim is made in good faith. <u>Crum v. Circus Circus Enters.</u>, 231 F.3d 1129, 1131 (9th Cir. 2000) (citation omitted). "To justify dismissal, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" <u>Id.</u> (quoting <u>Budget Rent-A-Car, Inc. v. Higashiguchi</u>, 109 F.3d 1471, 1473 (9th Cir. 1997)). "[A] defendant may secure a dismissal on the ground that it appears to a legal certainty that the claim is really for less than the jurisdictional amount when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." <u>Id.</u> (citing <u>Pachinger v. MGM Grand Hotel-Las</u>

Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986)).

The Ninth Circuit has stated that such "legal certainty" exists "when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." Pachinger v. MGM Grand Hotel-Las Vegas, Inc., 802 F.2d 362, 364 (9th Cir. 1986). "Only three situations clearly meet the legal certainty standard: (1) when the terms of a contract limit the plaintiff's possible recovery; (2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and (3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction." Id. at 363.

The party asserting diversity jurisdiction bears the burden of proof. Id. When a court dismisses a claim for failure to properly allege diversity jurisdiction, leave to amend should be granted unless doing so would be futile. See Fed. R. Civ. P. 15(a)(2); see also Jacobs v. Patent Enforcement Fund, Inc., 230 F.3d 565, 567-68 (9th Cir. 2000).

## II.  Motion to Dismiss for Failure to Plead Fraud with Particularity

Federal Rule of Civil Procedure 9(b) requires "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b). "Rule 9(b) requires

particularized allegations of the circumstances constituting fraud." In re. GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc).  Rule 9(b) requires the pleading to provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007)(internal quotations omitted). "Averments of fraud must be accompanied by the who, what, when where, and how of the misconduct charged." Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  Plaintiffs may not simply plead neutral facts to identify the transaction, but rather, the plaintiffs must also set forth what is false or misleading about a statement, and why it is false.  See GlenFed, 42 F.3d at 1548.

A motion to dismiss a claim grounded in fraud for failure to plead with particularly under Rule 9(b) is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Vess, 317 F.3d at 1107.  Thus, "[a]s with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice.  Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect."  Id.

**III.  Motion to Dismiss for Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)") permits dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  Courts may also "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  See Sprewell, 266 F.3d at 988; Nat'l Assoc. for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology, 228 F.3d 1043, 1049 (9th Cir. 2000); In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).  Moreover,

11

the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Sprewell, 266 F.3d at 988.

As the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims."  De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir.), cert. denied, 441 U.S. 965 (1979). The court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of a plaintiff's claims. Id.

In summary, to survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. (internal

citations and quotations omitted).  Dismissal is appropriate under Rule 12(b)(6) if the facts alleged do not state a claim that is "plausible on its face."  Id. at 570.

## IV.  Special Considerations for a Pro Se Litigant

A pro se litigant's pleadings must be read more liberally than pleadings drafted by counsel.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987).  When a plaintiff proceeds pro se and technically violates a rule, the court should act with leniency toward the pro se litigant.  Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Pembrook v. Wilson, 370 F.2d 37, 39-40 (9th Cir. 1966).  However, "a pro se litigant is not excused from knowing the most basic pleading requirements."  American Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1107-08 (9th Cir. 2000) (citations omitted).

Before a district court may dismiss a pro se complaint for failure to state a claim upon which relief can be granted, the court must provide the pro se litigant with notice of the deficiencies of the complaint and an opportunity to amend it if the deficiencies can be cured, prior to dismissal.  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992); Eldridge, 832 F.2d at 1136.  However, the court may deny leave to amend where amendment would be futile.  Flowers v. First Hawaiian Bank, 295

F.3d 966, 976 (9th Cir. 2002) (<u>citing</u> <u>Cook, Perkiss & Liehe, Inc.</u> <u>v. N. Cal. Collection Serv., Inc.</u>, 911 F.2d 242, 247 (9th Cir. 1990) (per curiam)); <u>Eldridge</u>, 832 F.2d at 1135-36.  Similarly, "when the district court transforms a motion to dismiss into a motion for summary judgment, it must inform a plaintiff who is proceeding pro se that it is considering more than the pleadings and must afford a reasonable opportunity to present all pertinent material." <u>Lucas v. Dept. of Corrections</u>, 66 F.3d 245, 248 (9th Cir. 1995).

## **DISCUSSION**

I.  **Defendants' Requests to Strike**

    A.  <u>Defendants' Request to Strike Plaintiff's Pleadings Because They Have Been "Ghost-written"</u>

Defendants argue that an attorney has actually written Plaintiff's pleadings that are at issue on this motion. Defendants argue that it is prejudicial for Plaintiff to have signed them pro se, therefore Defendants request that the Court strike the pleadings.  Reply at 4.  Defendants assert that Plaintiff admitted to Defendant's counsel that Lila Barbara Kanae, Esq. drafted the Second Amended Complaint for him.  Reply at 7.  The Court agrees that the Second Amended Complaint and Opposition appear to be written by an attorney but signed by Plaintiff, and the Court agrees that such a practice is

inappropriate.[2/]   <u>See</u> <u>Ricotta v. State</u>, 4 F. Supp. 2d 961, 986

(S.D. Cal. 1998)(citations omitted).   The court in <u>Ricotta</u> looked

to another federal court's explanation of the issues surrounding

ghost-writing:

> ghost-writing raise[s] three areas of concern.   First,
> . . . the standard practice of federal courts is to
> interpret filings by pro se litigants liberally and to
> afford greater latitude as a matter of judicial
> discretion. [Therefore,] allowing a pro se litigant to
> receive such latitude in addition to assistance from an
> attorney would disadvantage the nonoffending party.
> Second, . . . ghost-writing is a deliberate evasion of
> the responsibilities imposed on counsel by Fed. R. Civ.
> P. 11.   Rule 11 obligates members of the bar to sign
> all documents submitted to the court, to personally
> represent that there are grounds to support the
> assertions made in each filing.
>
> Third, . . . such behavior implicate[s] the Rules of
> Professional Responsibility, specifically the ABA's
> Model Code of Responsibility DR I-102(A)(4), providing
> that an attorney should not engage in conduct involving
> dishonesty, fraud, deceit or misrepresentation.
> Additionally, . . . '[h]aving a litigant appear to be
> pro se when in truth an attorney is authoring pleadings
> and necessarily guiding the course of the litigation
> with an unseen hand is ingenuous to say the least; it
> is far below the level of candor which must be met by
> members of the bar.'

---

[2/] The Court acknowledges that Ms. Kanae did not intend to
mislead the Court.   Ms. Kanae was present at the hearing on this
motion and admitted that she had assisted Mr. Smallwood in the
preparation of his filing.   She had contacted the Hawaii State
Ethics Commission, which apparently advised her that she could
provide assistance to Mr. Smallwood without appearing in this
action.   The Court disagrees with that advice but recognizes that
Ms. Kanae did not intend to deliberately mislead the Court.
Although she was not prepared to represent Mr. Smallwood at the
hearing and argue on his behalf, Ms Kanae has now appeared in
this action, and the Court is confident that she will sign all
future pleadings that she prepares (as she properly did for
Plaintiff's Second Supplemental Mem.).

Ricotta, 4 F. Supp. 2d at 986 (internal citations omitted).

The Court finds that striking Plaintiff's pleadings is too drastic a remedy.  However, in light of the assistance Plaintiff received from counsel, the Court will not liberally construe them as it normally would for a pro se party.

    B.   <u>Defendant's Request to Strike Plaintiff's Supplemental Memorandum</u>

Next, the Court will address Defendants' request to strike Plaintiff's Supplemental Memorandum.  Reply at 14-15.  On July 1, 2010, Plaintiff submitted the Supplemental Memorandum, which includes a copy of the Texas Deceptive Trade Practices-Consumer Protection Act.  This Supplemental Memorandum was untimely as Plaintiff's Opposition was due June 28, 2010, and Plaintiff did not seek leave to file any supplemental briefing. See Local Rule 7.4 ("[a]ny opposition or reply that is untimely filed may be disregarded by the court or stricken from the record.  No further or supplemental briefing shall be submitted without leave of court").  However, despite its untimeliness, in the interest of completeness, the Court requested supplemental briefing to consider the issues raised by the Supplemental Memorandum.  Accordingly, Defendant's motion to strike is denied as both parties have now had an opportunity to present briefing on the issues, which the Court will address infra.

## II.   Subject Matter Jurisdiction

Defendants move to dismiss the complaint under Fed. R.

16

Civ. P. 12(b)(1) arguing that Plaintiff has not established this Court's jurisdiction.

Generally, the amount in controversy is determined from the face of the pleadings.  The sum claimed by the plaintiff controls so long as the claim is made in good faith.  <u>Crum v. Circus Circus. Enters.</u>, 231 F.3d 1129, 1131 (9th Cir. 2000).  To justify a dismissal on the basis of failure to adequately plead the amount in controversy, it must appear to a legal certainty that plaintiff's claims are really for less than the jurisdictional amount.  <u>Crum</u>, 231 F.2d at 1131.  "Only three situations clearly meet the legal certainty standard: (1) when the terms of a contract limit the plaintiff's possible recovery; (2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and (3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction."  <u>Pachinger</u>, 802 F.2d at 363.

Defendants argue that Plaintiff's claims are contractually limited to $65.00 for account fees by a User Agreement that Plaintiff agreed to in order to play Lineage II. Motion at 25.  Thus, Defendants argue Plaintiff's damages are contractually limited to well below the $75,000 jurisdictional limit.  Motion at 25.  Defendants assert that in determining whether a contract limits a plaintiff's possible recovery, a court may rely on documents referenced in the complaint.  Motion at 23 (citing <u>Marolda v. Symantec Corp.</u>, 672 F. Supp. 2d 992, 996

17

(N.D. Cal. 2009); In re Silicon Graphics Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)).

Defendants argue that Plaintiff makes repeated allegations based on references to the contents of the User Agreement, and thus the Court may consider the User Agreement, even though it is not attached to Plaintiff's Second Amended Complaint.  Motion at 23.  Plaintiff opposes this proposition asserting that "the doctrine of incorporation by reference is inapplicable here, and that production of a single User Agreement, without more, does not defeat plaintiff's claims." Opposition at 6.  Plaintiff relies on In re America Online, Inc., 168 F. Supp. 2d 1359 (S.D. Fla. 2001) to argue that consideration of the User Agreement is inappropriate in this case.  Plaintiff also asserts that he did not allege the contents of the user agreement in his complaint and that without discovery, he questions the authenticity of the document "in so far as it purports to be a pertinent document or full and complete representation of the User Agreements in place throughout." Opposition at 9.

The Court finds that Plaintiff has explicitly referenced the User Agreement in his complaint.  In paragraph 44, Plaintiff asserts "[w]hen Plaintiff started playing Lineage II, the user agreement or rules did not provide for the banning of 'related accounts' where a single player had been identified for serious rules violations such as real money transfers."  Second

Am. Compl. ¶ 44.  In paragraph 45, Plaintiff asserts a "User Agreement is displayed when one logs into the game, but the rules therein were frequently changed by defendants who made no attempt to call the players' attention to the changes."  Second Am. Compl. ¶ 45.  Plaintiff also alleges that there were "Game Masters which are supposed to police the players and enforce the game rules, especially the rules that ensure fairness for players, such as the absolute prohibition of using third-party automatic play machines (known as 'botting')" and that these game rules were not enforced fair and square.  Second Am. Compl.  ¶¶ 51-52.  Plaintiff repeats these allegations as part of the basis for all of his claims except for defamation.  See Second Am. Compl. ¶¶ 66, 67, 76, 90, 95, 98, and 102.

The Court also rejects Plaintiff's challenges to the authenticity of the User Agreement.  In-house counsel for Defendant NC Interactive, Inc. submitted a declaration in support of the Motion ("Esber Declaration").  In that declaration Mr. Esber declares under penalty of perjury that "Attached as Exhibit "1" is a true and correct copy of the User Agreement for Lineage II.  This User Agreement was in effect since April 2008 when Plaintiff Craig Smallwood alleges he played Lineage II."  Esber Declaration ¶ 3.  Mr. Esber further declares that a player is required to agree to the terms and conditions of the User Agreement and Rules of Conduct before playing Lineage II and cannot play Lineage II unless he has agreed to the terms of the

User Agreement.  Esber Declaration ¶¶ 4-5.  Accordingly, the Court will examine the User Agreement and consider its effect on this Court's jurisdiction.

Defendants argue that the User Agreement contractually limits its liability to the Plaintiff because it clearly and unambiguously provides:

> THE MAXIMUM AMOUNT OF NC INTERACTIVE'S (OR ANY OF ITS SHAREHOLDERS, PARTNERS, AFFILIATES, DIRECTORS, OFFICERS, SUBSIDIARIES, EMPLOYEES, AGENTS, SUPPLIERS, LICENSEES OR DISTRIBUTORS) LIABILITY TO YOU UNDER THIS AGREEMENT SHALL NOT EXCEED AN AMOUNT EQUAL TO THE LOWER OF THE (i) ACCOUNT FEES OR (ii) PURCHASE PRICE OF THE ADDITIONAL FEATURES EACH OF THE FOREGOING (i) OR (ii) AS PAID BY YOU TO NC INTERACTIVE IN THE PRECEDING SIX (6) MONTHS.
> IN NO EVENT SHALL NC INTERACTIVE, NOR ANY OF ITS CONTENT PROVIDERS, SHAREHOLDERS, PARTNERS, AFFILIATES, DIRECTORS, OFFICERS, EMPLOYEES, AGENTS OR SUPPLIERS, BE LIABLE TO YOU OR TO ANY THIRD PARTY FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR EXEMPLARY DAMAGES, (INCLUDING, WITHOUT LIMITATION, LOSS OF BUSINESS PROFITS, BUSINESS INTERRUPTION, LOSS OF BUSINESS INFORMATION OR ANY OTHER PECUNIARY LOSS), REGARDLESS OF THE THEORY OF LIABILITY (INCLUDING CONTRACT, NEGLIGENCE, OR STRICT LIABILITY) ARISING OUT OF OR IN CONNECTION WITH THE SERVICE, THE SOFTWARE, YOUR ACCOUNT OR THIS AGREEMENT WHICH MAY BE INCURRED BY YOU, WHETHER OR NOT NC INTERACTIVE (OR ANY SUCH OTHER RELEASED PARTY) MAY HAVE BEEN ADVISED THAT ANY SUCH DAMAGES MIGHT OR COULD OCCUR.

Esber Declaration, Exhibit 1 (User Agreement ¶ 12).  Defendants argue that by playing Lineage II, Plaintiff repeatedly agreed to and reaffirmed his adherence to the terms and conditions of the User Agreement.  Motion at 25.  Therefore, Defendants argue that the User Agreement is an enforceable contract between Plaintiff and Defendants.  Id. (citing Meridian Project Systems, Inc. v.

Hardin Const. Co., LLC, 426 F. Supp. 2d 1106 (E.D. Cal. 2006));
see also Reply at 12-13 (citing Moore v. Microsoft Corp., 293
A.D.587, 587 (N.Y. App. Div. 2d Dep't 2002); Davidson &
Associates, Inc. v. Internet Gateway, Inc., 334 F. Supp. 2d 1164,
1176 (E.D. Mo. 2004); I-A Equip. Co. v. Icode, Inc., No. 1460,
2003 WL 549913 at *2 (Mass. App. Div. Feb. 21, 2003) (all finding
end user license agreements valid and enforceable).

Plaintiff asserts that a "click agreement" is void
according to Texas law.  Supplemental Memorandum at 2.  The Court
must consider whether this Texas law should apply here.  In
diversity cases, the law of the forum state is applied in choice-
of-law analyses.  Van Dusen v. Barrack, 376 U.S. 612, 628 (1964).
Because Hawai'i is the forum state, this Court must analyze which
law applies under Hawai'i choice-of-law rules.

1.   Choice of Law Analysis

Under Hawai'i choice-of-law rules, the Court is to look
"to the state with the most significant relationship to the
parties and subject matter." Roxas v. Marcos, 89 Hawai'i 91, 117
n. 16, 969 P.2d 1209 (1998).  The Hawai'i Supreme Court has
instructed this Court to look at factors such as (1) where
relevant events occurred, (2) the residence of the parties, and
(3) whether any of the parties had any particular ties to one
jurisdiction or the other.  See id.  Further, "there is a
presumption that Hawaii law applies unless another state's law
'would best serve the interests of the states and persons

involved.'" <u>UARCO Inc. v. Lam</u>, 18 F. Supp. 2d 1116, 1123 (D. Haw. 1998).

Although Hawaii choice of law analysis places an emphasis on determining which state has the strongest interest in seeing its laws applied to a particular case, under Hawai'i law, "a choice of law provision provided for in a contract between the parties will generally be upheld." <u>See</u> <u>Hawaii Forest & Trail Ltd. v. Davey</u>, No. 07-00538 HG-BMK, 2009 WL 47331 at *3 (D. Haw. Jan. 8, 2009) (<u>citing</u> <u>Del Monte Fresh Produce, Inc. v. Fireman's Fund Ins. Co.</u>, 117 Hawai'i 357, 364-65, 183 P.3d 734, 741-42 (2007)). Here, there appears to be a contract which contains a choice of law provision.

The User Agreement at issue here states, "[t]his Agreement is governed by and shall be construed and enforced under the laws of the State of Texas, without applying any conflicts of law principles which would require application of the law of any other jurisdiction." Esber Declaration Exhibit 1, User Agreement § 15 "General Provisions."

Recent Ninth Circuit precedent concerning a choice-of-law provision has found that

> Under Texas law, similarly narrow choice-of-law clauses, providing under what law an agreement "shall be interpreted and enforced," apply only to the interpretation and enforcement of the contract itself; they do not "encompass all disputes between the parties." <u>Stier v. Reading & Bates Corp.</u>, 992 S.W.2d 423, 433 (Tex. 1999); <u>accord</u> <u>Benchmark Elecs., Inc. v. J.M. Huber Corp.</u>, 343 F.3d 719, 727 (5th Cir.2003) (calling similar provision "narrow"). They govern

claims that "rise or fall on the interpret[ation] and enforce[ment] of any contractual provision." Stier, 992 S.W.2d at 434 (internal quotations omitted) (alterations in original); see also Busse v. Pac. Cattle Feeding Fund # 1, Ltd., 896 S.W.2d 807, 812-13 (Tex. App. 1995) ("The rights, obligations, and cause of action do not arise from the contracts but from the Deceptive Trade Practices Act, the Texas Securities Act, and the common law.").

Narayan v. EGL, Inc., __ F.3d ___, No. 07-16487, 2010 WL 2735708 at *2 (9th Cir. July 13, 2010).  Thus, the Ninth Circuit found that "appellants' claims arose under the Labor Code, a California regulatory scheme, and consequently, California law should apply to define the boundaries of liability under that scheme."  Id. at *3.

Accordingly, the Court finds that Texas law should determine the validity of the agreement and the limitation of liability that appears in the agreement, but that because Plaintiff's claims arise under Hawai'i statutory and common law, the Court will consider whether Plaintiff states a claim under Hawai'i law.

2.   Validity of Click Agreements

Plaintiff asserts that "defendants' resort to the click agreement should not be countenanced in that such agreements are declared void and unconscionable under the law of NC Interactive's home state in the context of consumer protection claims."  Supplemental Memorandum at 3.    As discussed infra, Plaintiff apparently relies on the Texas Act in support of this statement.

The type of User Agreement at issue here is often called a "clickwrap" agreement.  See Specht v. Netscape Communications Corp., 306 F.3d 17, 22 n.4 (2d Cir. 2002) (explaining "[t]his kind of online software license agreement has come to be known as 'clickwrap' (by analogy to 'shrinkwrap,' used in the licensing of tangible forms of software sold in packages) because it "presents the user with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon.  The product cannot be obtained or used unless and until the icon is clicked.").  These agreements have routinely been upheld.  See Guadagno v. E*Trade Bank, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) (explaining that a party may be bound by a 'clickwrap' agreement if the terms are clear and acceptance is unambiguous, regardless of whether he actually reads them); see also Inter-Mark USA, Inc. v. Intuit, Inc., No. c-07-04178, 2008 WL 552482, *9 (N.D. Cal. Feb. 27, 2008) (dismissing complaint based upon Software License Agreement and noting that, in addressing whether 'clickwrap' agreements are valid, courts apply "traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the 'clickwrap' agreement").

Contrary to Plaintiff's argument this Court has found that Texas courts have approved the validity of "clickwrap" agreements.  See Via Viente Taiwan, L.P. v. United Parcel

Service, Inc., No 4:08-cv-301, 2009 WL 398729 at *2 n.1 (E.D. Tex. 2009) (explaining that the "court finds the License Agreement to be a so-called 'clickwrap' agreement. Clickwrap agreements require a user affirmatively to manifest assent to conditions proposed by the software provider in order to continue with the installation of the software. This court and others have upheld the validity of such agreements.") (internal citations omitted); Realpage, Inc. v. EPS, Inc., 560 F. Supp. 2d 539, 545 (E.D. Tex. 2007) (noting that "Texas law recognizes the validity of clickwrap agreements" and holding that the clickwrap license agreements presented in that case were enforceable provided that they also comported with the principles of contract contained in the Texas Business and Commerce Code); Recursion Software, Inc. v. Interactive Intelligence, Inc., 425 F. Supp. 2d 756, 781-83 (N.D. Tex. 2006) (holding clickwrap licenses are valid and enforceable contracts).

The Court finds the agreement here valid. Plaintiff had notice of the User Agreement, was required to affirmatively agree to it by clicking "I agree," and had an opportunity to cease playing Lineage II if he disagreed with it. See Esber Declaration, Exhibit 1 (User Agreement ¶ 1). Instead, he repeatedly reaffirmed his acceptance of the User Agreement by continuing to play. Furthermore, Plaintiff even alleges that he read the User Agreement. See Second Am. Compl. ¶ 44 ("[w]hen plaintiff started playing Lineage II, the user agreement or rules

25

did not provide for the banning of 'related accounts' . . . .");
see also Second Am. Compl. ¶ 45 (a "User Agreement is displayed
when one logs into the game").

Having determined that the User Agreement is a valid
agreement, the Court must next determine what, if any, effect it
has here.  Defendants argue that the User Agreement limits the
amount of damages to the account fees for the preceding six
months and precludes recovery of special and punitive damages.
Motion at 25.

    3.   Limitations of Liability in Click Agreements

Texas courts have also upheld the validity of
limitations of liability.  See Bray Intern, Inc. v. Computer
Associates Intern, Inc., No. CIV H-02-0098, 2005 WL 3371875 at *4
n.4 (S.D. Tex. Dec. 12, 2005) (citing, inter alia, Global Octanes
Tex., L.P. v. BP Exploration & Oil, Inc., 154 F.3d 518, 521 (5th
Cir.1998) (applying Texas law and honoring the parties' agreement
to limit liability); Head v. U.S. Inspect DFW, Inc., 159 S.W.3d
731, 747-48 (Tex. App.-Fort Worth 2005, no pet.)(holding
limitation of liability clauses to be enforceable if not
unconscionable or otherwise contrary to public policy)); see also
Smith v. Golden Triangle Raceway, 708 S.W.2d 574, 576 (Tex. App.
1986) (rejecting an argument questioning the validity of a
release based upon "the great disparity of the bargaining
position of the parties" because it "simply was not a
'bargaining' situation'" as the plaintiff was "under no

compulsion to go into the pit area" where he was injured.).

Although there is some conflict in the case law, Texas courts appear to follow the majority rule that a contractual release cannot limit one's liability for gross negligence.  In a case of first impression, the Texas Court of Appeals-Beaumont Division held that "a term in a release attempting to exempt one from liability or damages occasioned by gross negligence is against public policy." Smith v. Golden Triangle, 708 S.W.2d 574, 576 (Tex. App. 1986).  However, a contrary result in certain circumstances has been reached by at least two other Texas Court of Appeals.  See Newman v. Tropical Visions, Inc., 891 S.W.2d 713 (Tex. App.-San Antonio 1994) (finding that negligence and gross negligence claims were not separable in that case and thus pre-injury release was valid) and Valero Energy Corp. v. M.W. Kellogg Const. Co., 866 S.W.2d 252, 258 (Tex. App.-Corpus Christi 1993) (finding that two sophisticated entities had agreed to waive certain rights under a contract and that the waiver provision absolving one party of all liability sounding in products liability and gross negligence did not offend public policy).

The Texas Supreme Court has not explicitly resolved this conflict but has at least implicitly supported the Smith decision.  See Memorial Medical Center of East Texas v. Keszler, M.D., 943 S.W.2d 433 (Tex. 1997).  In Memorial Medical Center, the Texas Supreme Court explained:

The remaining question is whether claims for gross

27

negligence can ever be released. The court of appeals
held that such a release is against public policy. 931
S.W.2d at 63 (citing Smith v. Golden Triangle Raceway,
708 S.W.2d 574, 576 (Tex. App.-Beaumont 1986, no
writ)). However, the court of appeals failed to
distinguish a pre-accident waiver of liability from a
post-injury release made in settlement of claims. In
<u>Golden Triangle</u>, the issue was whether a pre-injury
release could effectively dispense with a claim of
gross negligence. <u>Golden Triangle</u>, 708 S.W.2d at 576.
The court found a pre-injury release of gross
negligence invalid as against public policy. Id. We
have never held post-injury releases of gross
negligence claims invalid. There is no logic in
prohibiting people from settling existing claims.
Significantly, such a rule would preclude settlement of
many such claims.

<u>Id.</u>

Thus, in light of the foregoing authority, it appears

that one cannot pre-emptively waive a gross negligence claim but

that one can settle a claim for gross negligence after the claim

has arisen.  Accordingly, the Court finds that the waiver and

limitation of liability in the User Agreement is not valid as to

the gross negligence claim.

Under Texas law, a party also may not waive its right

to bring a fraud claim.[3/]  <u>See</u> <u>Lone Star Fund V. (U.S.), L,P. v.</u>

---

[3/] The Court observes that there is no conflict between
Texas and Hawai'i law on these issues. Hawai'i courts permit a
party to waive liability in certain circumstances, but not in
situations of intentional or reckless conduct.  <u>See</u> <u>Laeroc</u>
<u>Waikiki Parkside, Llc v. K.S.K. (Oahu) Limited Partnership</u>, 115
Hawai'i 201, 224, 166 P.3d 961, 984 (2007) (holding that "a
nonrecourse provision that expressly protects a party from tort
liability would be permissible as long as the agreement was not
unconscionable and it was knowingly and willingly made, and,
adopting the majority view of the states, such a provision is
valid to the extent it does not waive liability in situations of
(continued...)

Barclays Bank PLC, 594 F.3d 383, 390 (5th Cir. 2010) ("Under
federal and Texas securities laws and Texas common law, a party
cannot waive its rights to bring fraud claims by contract or
otherwise").  Accordingly, if Plaintiff's fraud claim is valid,
such a claim would not be limited by the User Agreement.

Plaintiff, however, argues that the waiver is entirely
prohibited by the Texas Deceptive Trade Practices and Consumer
Protection statute (the "Texas Act").  The Court disagrees.  The
Act does not prohibit the waiver in the User Agreement.  As
Defendants argue, "the anti-waiver provision of the Act only
prevents consumers from unknowingly waiving provisions provided

[3]/(...continued)
intentional or reckless conduct") (citing Wheelock v. Sport
Kites, Inc., 839 F. Supp. 730, 736 (D. Haw. 1993) (explaining
that "Hawaii courts permit a waiver of negligence claims")).
     The Wheelock court found, however, that public policy
weighed against allowing a party to disclaim liability for gross
negligence and strict liability.  Wheelock, 839 F. Supp. at 736;
see also Laeroc Waikiki Parkside, 115 Hawai'i at 224, 166 P. 3d
at 984 (citing Alack v. Vic Tanny Int'l of Missouri, Inc., 923
S.W.2d 330, 337 (Mo. 1996) (explaining that "there is no question
that one may never exonerate oneself from future liability for
intentional torts or for gross negligence, or for activities
involving the public interest"); S. Williston, Williston on
Contracts § 19:23 at 291-97 (4th Ed. 1998) ("An attempted
exemption from liability for a future intentional tort or crime
or for a future willful or grossly negligent act is generally
held void, although a release exculpating a party from liability
for negligence may also cover gross negligence where the
jurisdiction has abolished the distinction between degrees of
negligence and treats all negligence alike.").  Because Hawai'i
has not abolished the distinction between negligence and gross
negligence, the parties could not waive liability for gross
negligence under Hawai'i law.  See Cape Flattery Ltd. v. Titan
Maritime LLC, 607 F. Supp. 2d 1179, 1189 (D. Haw. 2009)
(explaining various definitions of gross negligence).

by the Act itself." <u>See</u> Defendant's Supplemental Mem. at 3
(emphasis in original); Tex Bus. & Com. Code Ann § 17.42 (Vernon
1995) (permitting a waiver "of the provisions of this subchapter"
provided that it is in writing and signed by the consumer, the
consumer is not in a significantly disparate bargaining position,
and the consumer is represented by legal counsel in acquiring the
goods and services); <u>Arthur's Garage, Inc. v. Racal-chubb Sec.</u>
<u>Systems, Inc.</u>, 997 S.W. 2d, 803, 811 (Tex. App. 1999) ("this 'no-
waiver' provision applies to rights created by the DTPA.
Therefore, a limitation of liability clause is invalid insofar as
it purports to waive liability for an act defined as 'deceptive'
under the laundry list of DTPA violations contained in section
17.46, which includes material misrepresentations.")

Here, Plaintiff has alleged claims for (I)
Misrepresentation/Deceit; (II) Unfair and Deceptive Trade
Practices; (III) Defamation/Libel/Slander; (IV) Negligence; (V)
Gross Negligence; (VI) Intentional Infliction of Emotional
Distress; (VII) Negligent Infliction of Emotional Distress; and
(VIII) Punitive Damages.  As discussed <u>infra</u>, Plaintiff's
Misrepresentation claim may be based upon either fraudulent
misrepresentation or negligent misrepresentation.  Thus,
Plaintiff's recovery for any claim for Negligent
Misrepresentation, Negligence, and Negligent Infliction of
Emotional Distress is limited and these claims cannot form the
basis of Plaintiff's damages for purposes of jurisdiction.

However, because liability for willful or fraudulent behavior or gross negligence cannot be waived, the Court must examine whether Plaintiff states a claim based on any of the foregoing.  As discussed _infra,_ because this Court finds that Plaintiff states a claim for gross negligence, and because claims for gross negligence cannot be waived or limited under Texas law, Defendants' motion to dismiss for lack of subject matter jurisdiction is denied.[4/]

## III. Analysis of Each Count Under Rules 9(b) and 12(b)(6)

    A.   Count I - Misrepresentation/Deceit

        **1.  Fraudulent Misrepresentation**

Plaintiff's first count is Misrepresentation/Deceit. Defendant argues  "It is well settled in the Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."  Motion at 10 (citing Meridian Project Systems, Inc. v. Hardin Const. Co., LLC, 404 F.

---

[4/] To the extent that Plaintiff attempts to create an issue regarding a conflict between NCsoft and NC Interactive, Inc., the Court rejects such an argument.  See Opposition at 12 n.4.  The User Agreement (and the waiver contained therein) limits NC Interactive Inc.'s liability as well as that of its shareholders and affiliates.  See Esber Declaration Exhibit 1 (User Declaration ¶ 12).  Because NC Interactive Inc. is a wholly-owned subsidiary of NCsoft, the Court finds that NCsoft would qualify both as a shareholder and an affiliate.  See Compl. ¶ 3 (alleging that NC Interactive Inc is a wholly owned subsidiary of NCsoft Corp.).  Black's Law Dictionary defines an affiliate as a "corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation" Black's Law Dictionary 63 (8th Ed. 2004) Accordingly, there is no conflict between NCsoft and NC Interactive Inc.

Supp. 2d 1214, 1219 (E.D. Cal 2005) (citing <u>Neilson v. Union Bank</u>
<u>of Cal., N.A.</u>, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003)).   In
Hawai'i the elements of fraud are: 1) false representations made
by the defendant, 2) with knowledge of their falsity (or without
knowledge of their truth or falsity), 3) in contemplation of
plaintiff's reliance upon them, and 4) plaintiff's detrimental
reliance.   <u>Fisher v. Grove Farm Co., Inc.</u>, 123 Hawai'i 82, 103,
230 P.3d 382, 403 (App. 2009) (citing <u>Hawaii's Thousand Friends</u>
<u>v. Anderson</u>, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989); <u>see</u>
<u>also</u> <u>Shoppe v. Gucci America, Inc.</u>, 94 Hawai'i 368, 386, 14 P.3d
1049, 1067 (2000).

        Rule 9(b) requires allegations of fraud to be pled with
particularity and requires the pleading to provide an "account of
the time, place, and specific content of the false
representations as well as the identities of the parties to the
misrepresentations."   <u>See</u> <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764
(9th Cir. 2007).

        Plaintiff here has not pled fraudulent
misrepresentation with the required specificity.   Plaintiff
alleges that Defendant falsely related that the three-month
automatic payment plan was for Plaintiff's benefit, when it was a
means to retain Plaintiff's money after he was banned.   Second
Am. Compl. ¶ 66(a).   Plaintiff, however, does not state when such
alleged misrepresentation was made, the specific content of the
misrepresentation, where the misrepresentation was made, and who

made the misrepresentation.  See Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (the pleading much provide an "account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations"); Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.").

Plaintiff also asserts that Defendants falsely represented that Lineage II was a fair game.  Second Am. Compl. ¶ 66(b).  Plaintiff similarly fails to specify who made such a misrepresentation, where it was made, or when it was made.

Next, Plaintiff alleges that Defendants falsely related that Lineage II was a safe product.  This allegation suffers similar infirmities.  Plaintiff asserts in a conclusory fashion that there was "inadequate advice to plaintiff as to 'taking breaks' from play, but not disclosing that lengthy breaks in play were necessary to avoid addition to the game."  Second Am Compl. ¶ 66(c).  Plaintiff, however, undercuts his own claim here, as he alleges that Defendants did suggest "taking breaks" and does not assert that there was any affirmative statement that Lineage II was a safe product.  Furthermore, Plaintiff alleges that "the phenomena of psychological dependence and addiction to playing computer games was recognized by and known to defendants and other members of the industry," but he fails to specify who from

33

the Defendants knew about it and when they allegedly knew it. Second Am. Compl. ¶ 17.

Finally, Plaintiff alleges Defendants falsely related that "botting was not allowed, when in fact, it was rampantly obvious during plaintiff's game play but nothing was done about it until defendants banned players for purposes of their profits and not to provide a fair playing field to plaintiff and other game players." Second Am. Compl. ¶ 66(d). Plaintiff does not allege who told him botting was not allowed, when such a misrepresentation was made, or even how he could have relied on such an alleged misrepresentation if it was "obvious" to him that botting taking place.

Plaintiff does specifically allege that Defendants' reason for banning him from the game was "phony and fraudulent," and he is very detailed in this allegation. See ¶¶ 35-37. However, for this allegation of fraud, any allegation of reliance appears to be missing. Plaintiff has alleged that he relied on Defendants' actions to his detriment by investing his time and money playing the game, which would have gone elsewhere had he known about Defendants misrepresentations. See Second Am. Compl. ¶ 63. Thus, because his sole alleged reliance was playing the game, he cannot have relied on playing the game once he was banned from playing.

In sum, Plaintiff has not provided the requisite, who, what, when, and how necessary to establish an intentional

misrepresentation claim and provide defendants with adequate notice. The Court has already granted Plaintiff leave to amend his fraud claim once.  In his Second Amended Complaint, even with counsel's assistance, he has been unable to successfully plead a claim.  Therefore, in light of the foregoing and because any further amendment would likely be futile, the Court dismisses Plaintiff's intentional misrepresentation claim with prejudice. See Flowers v. First Hawaiian Bank, 295 F.3d 966, 976 (9th Cir. 2002) (citing Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 247 (9th Cir. 1990) (per curiam)); Eldridge, 832 F.2d at 1135-36.

## 2.   Negligent Misrepresentation

Hawai'i, however, also has a cause of action for negligent misrepresentation.  In a negligent misrepresentation claim, Hawai'i law requires that 1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." Blair v. Ing, 95 Hawai'i 247, 21 P.3d 452, 474 (Haw. 2001) (citing Restatement (Second) of Torts § 552); see also Peace Software, Inc. v. Hawaiian Electric Company, Inc., No. 09-00408, 2009 WL 3923350 at *6 (D. Haw. Nov. 17, 2009) (analyzing the Hawai'i standard for negligent misrepresentation in-depth and concluding that the three elements set forth in Blair are the standard).  A

negligent misrepresentation claim does not require intent, and accordingly is not subject to Rule 9(b).  See <u>Peace Software</u>, 2009 WL 3923350 at *8; <u>see also</u> <u>Bush v. Rewald</u>, 619 F. Supp. 585, 608 (D. Haw. 1985) (holding that "[s]ince the common-law negligent  misrepresentation count need not be pled with particularity under Rule 9(b), defendants' motion to dismiss [was] denied"); <u>contra</u> <u>Baltimore County v. Cigna Healthcare</u>, 238 Fed. Appx. 914, 925 (4th Cir. 2007) ("in light of the similarities between fraud and its close cousin negligent misrepresentation, it is hardly surprising that a number of our sister circuits espouse the view that Rule 9(b) does indeed apply to claims of negligent misrepresentation").

        The Court is also aware that there are cases in this Circuit asserting that "in the Ninth Circuit, negligent misrepresentation claims are subject to heightened pleading requirements under Rule 9(b)."  See <u>Wolph v. Acer America Corp.</u>, No. C 09-01314 JSW, 2009 WL 2969467 at *5 (N.D. Cal. Sept. 14, 2009).  However, as Judge Mollway explained in <u>Peace Software</u>, those cases all appear to be based on California law, in which the elements for a negligent misrepresentation claim are similar to the elements for fraud.  <u>Peace Software</u>, 2009 WL 3923350 at *6.  Based upon a review of Hawai'i case law, Judge Mollway concluded that "the Hawaii Supreme Court does not appear to have been equating negligent misrepresentation with fraud."  <u>Id.</u>  This Court agrees.

Although it has a different standard, Plaintiff has not alleged a negligent misrepresentation claim because Plaintiff's allegations in this regard all sound in fraud.  Defendants assert that Vess v. Ciba-Geigy Corp. USA, applies to Plaintiff's claims.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003) (holding "[w]hen an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim.").  As the Ninth Circuit in Vess explains, "where fraud is not an essential element of a claim, only allegations ("averments") of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b).  Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of 8(a)."  Vess, 317 F.3d 1104-1105.  Furthermore, as explained in Marolda, the heightened pleading standard "does not apply, of course, to pleadings in the alternative or to claims that do not actually rest on the allegedly fraudulent event."  See Marolda, 672 F. Supp. 2d at 998; see also Fed. R. Civ. P. 8(d) (permitting alternative and inconsistent statements of a claim)

Plaintiff alleges that he "would not have opened the Lineage II accounts and persisted in play, had he not been misled and deceived by defendants in the manner described herein" and that he "did rely upon defendants' deceptions and invested his time and money that would have gone elsewhere had plaintiff known

37

of the deception." Second Am. Compl. ¶¶ 68, 70. Thus, the Court finds that Plaintiff's allegations he was "deceived" are the only possible basis for his negligent misrepresentation claim.

Accordingly, because these allegations are grounded in fraud and not pled with specificity, any purported claim for negligent misrepresentation is dismissed with prejudice.

B. <u>Unfair and Deceptive Trade Practices</u>

Defendants assert that Plaintiff's claim for unfair and deceptive trade practices under H.R.S. § 480-2 and 480-13 should be dismissed because it is established law that Rule 9(b)'s particularity requirement applies to state law causes of action. Motion at 14.

In <u>Kearns v. Ford Motor Co.</u>, the Ninth Circuit ruled that a plaintiff's claims under California's Consumers Legal Remedies Act and Unfair Competition Law were required to be plead with particularity pursuant to Fed. R. Civ. P. 9(b). <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1122 (9th Cir. 2009). The California Consumers Legal Remedies Act prohibits "unfair methods of competition and unfair and deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer." <u>Id.</u> Similarly, Hawaii's Unfair and Deceptive Trade Practices ("UDAP") statute provides "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." H.R.S. § 480-2.

Because this language is similar to California's statute, and since Plaintiff appears to base his claim on "fraudulent concealment" (Second Am. Compl. ¶ 76) the Court finds that Plaintiff is required to plead his UDAP claim with specificity. Plaintiff does not add any new factual allegations in his UDAP claim, thus the Court finds that this claim fails for the same reasons as the Misrepresentation claim. <u>See</u> Second Am. Compl. ¶ 76 (alleging (a) "fraudulent concealment of the reason for the 3-month automatic payment plan;" (b) "fraudulent concealment that the Game Masters would not act fair and square to all players;" (c) "fraudulent concealment of the addictive quality of Lineage II;" (d) "fraudulent concealment respecting policies toward botting and banning;" and (e) "unfair and deceptive policies respecting automatic payment plans, complaint and refund procedures, botting, and banning.")

   C.   <u>Defamation/Libel/Slander</u>

      Defendants argue that all of Plaintiff's claims are dependent on a common factual theme of fraud and misrepresentation and thus, they all must be plead with particularity under Rule 9(b).  Motion at 2.  Defendant cites <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107 (9th Cir. 2003).  Defendants assert that Plaintiff's defamation fails because it is not pled with particularity.  Motion at 16.  The Court rejects this argument.  Plaintiff's defamation claim is not based on the same facts that he does often repeat throughout his

complaint, but rather the defamation claim is based upon alleged false and defamatory statements that defendant made on October 5, 2009, which were published to other players.  Second Am. Compl. ¶¶ 84-85.

To prove defamation under Hawai'i law, Plaintiff must establish four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) the publisher was negligent; and (4) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication.  Wilson v. Freitas, 121 Haw. 120, 128 (App. 2009).  "A communication is defamatory when it tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him."  Fernandes v. Tenbruggencate, 65 Haw. 226, 228, 649 P.2d 1144, 1147 (Haw. 1982) (citing Restatement (Second) Torts § 559 (1977).  The Fernandes court further explained that "[w]hether a communication is defamatory 'depends, among other factors, upon the temper of the times, the current of contemporary public opinion, with the result that words, harmless in one age, in one community, may be highly damaging to reputation at another time or in a different place.'"  Id.  A person who publishes a false defamatory communication is subject to liability only if he (a) knows that the statement is false and that it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in

40

failing to ascertain them.   Restatement (Second) Torts § 580B.

        The Court finds that, at the pleading stage, Plaintiff has now pled all of the elements of defamation.   As discussed above, on a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.   <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996).   Furthermore, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims."   <u>De La Cruz v. Tormey</u>, 582 F.2d 45, 48 (9th Cir.), <u>cert. denied</u>, 441 U.S. 965 (1979).   The court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of a plaintiff's claims.   <u>Id.</u>   Based on Plaintiff's allegations that he was falsely accused of being involved in real money transfers, that those statements were published to other players, that Defendants were negligent in their investigation and in publishing that accusation, and that Plaintiff has suffered injuries, the Court finds that Plaintiff has stated a claim.

        However, because Plaintiff's claim for defamation is based upon negligence, Plaintiff's damages for such a claim are limited under the User Agreement.

41

D.   <u>Negligence and Gross Negligence</u>

Defendants also argue that Plaintiff's negligence and gross negligence claims are grounded on the same claims of fraudulent conduct that Plaintiff alleges throughout his Complaint, i.e. Defendants' misrepresentation of (1) the addictive nature of Lineage II, (2) its fair game policy, (3) its billing methods, and (4) its anti-botting policy.  Second Am. Compl. ¶¶ 89-90, 94-95.  Thus, Defendants argue that under <u>Vess</u> and <u>Kearns</u> Plaintiff's negligence and gross negligence claims must be dismissed because they are grounded in fraud and are not plead with particularity.  <u>See Vess</u>, 317 F.3d at 1107; <u>Kearns</u>, 567 F.3d at 1125.  The Court rejects this argument.

In order to succeed on a claim for negligence, a party must show:

> 1.   A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks.
> 2.   A failure on [the actor's part] to conform to the standard required...
> 3.   A reasonable close causal connection between the conduct and the resulting injury...
> 4.   Actual loss or damage resulting to the interests of another...

<u>White v. Sabatino</u>, 415 F. Supp. 2d 1163, 1173 (D. Haw. 2006) (citing <u>Ono v. Applegate</u>, 62 Haw. 131, 137, 612 P.2d 533, 538 (1980)).  In order to succeed on a claim for gross negligence a party must show "that there has been an 'entire want of care'" which raises a presumption of "conscious indifference to

42

consequences." <u>Mullaney v. Hilton Hotels Corp.</u>, 634 F. Supp. 2d 1130, 1154 (D. Haw. 2009); <u>see also</u> <u>Cape Flattery Ltd. v. Titan Maritime LLC</u>, 607 F. Supp. 2d 1179, 1189 (D. Haw. 2009); <u>see also</u> <u>Royal Ins. Co. of Am. v. Sw. Marine</u>, 194 F.3d 1009, 1015 (9th Cir. 1999) (quoting Black's Law Dictionary 1185 (4th ed. 1968)); <u>Pancakes of Haw., Inc. v. Pomare Props. Corp.</u>, 85 Hawai'i 286, 293, 944 P.2d 83, 90 (Haw. App. 1997) (noting that gross negligence has been defined as "[i]ndifference to a present legal duty and utter forgetfulness of legal obligations so far as other persons may be affected" (internal citation and quotation omitted)). Gross negligence "is simply a point on a continuum or probability, and its presence depends on the particular circumstances of each case." <u>Royal Ins. Co. of Am.</u>, 194 F.3d at 1015 (internal citation and quotation omitted); <u>Pancakes of Hawai'i, Inc.</u>, 85 Hawai'i at 293, 944 P.2d 83 ("The element of culpability that characterizes all negligence is in gross negligence magnified to a high degree as compared with that present in ordinary negligence." (internal citation and quotation omitted).

Plaintiff alleges that "defendants acted with negligence [or gross negligence] in designing, developing, manufacturing, inspecting, testing, marketing, advertising, promoting, selling, distributing, maintaining, revising, servicing, administrating, and overseeing Lineage II." Second Am. Comp. ¶¶ 90(a), 95(a). In addition, Plaintiff alleges

failure to warn and defective product claims are separate and distinct from Plaintiff's fraud allegations.  Second Am. Compl. ¶¶ 90(b) ("[D]efendants acted negligently in failing to warn or instruct or adequately warn or instruct plaintiff and other players of LineageII of its dangerous and defective characteristics, and of the safe and proper method of using the game"), 90(c), 95(b), 95(c).  In light of Plaintiff's allegations, the Court finds that Plaintiff has stated a claim for both negligence and gross negligence.  Additionally, although Plaintiff's damages claim may be limited for the negligence claim, Plaintiff is not so limited with respect to the gross negligence claim as discussed <u>supra</u>.

      E.   <u>Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress</u>

Defendants also allege that Plaintiff's IIED and NIED claims must be dismissed for failure to plead with particularity. Motion at 17.  The Court disagrees and finds that these claims are not grounded in fraud such that they must be dismissed for lack of particularity.

However, Plaintiff has failed to state a claim for IIED.  In order to prove the tort of intentional infliction of emotion distress under Hawai'i law, Plaintiff must show: (1) the act that caused the harm was intentional or reckless; (2) the act was outrageous; and (3) the act caused extreme emotional distress to another.  <u>Young v. Allstate Ins. Co.</u>, 119 Hawai'i 403, 429

(2008).

Plaintiff has not pled facts sufficient to establish the second element, an act that was outrageous.  The Supreme Court of Hawaiʻi, has held that the tort of intentional infliction of emotional distress "requires conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind."  Hac v. Univ. of Hawaiʻi, 102 Hawaiʻi 92, 106 (2003) (citing Tibke v. McDougall, 479 N.W.2d 898, 907 (S.D. 1992)).  This Court cannot say that upon reading Plaintiff's complaint, "average members of our community might indeed exclaim, 'Outrageous.'"  See Young v. Allstate Ins. Co., 119 Hawaiʻi 403, 429-30 (2008).

As discussed infra, however, Plaintiff does have a negligence claim and the Court finds that he has pled an NIED claim as well.  The Hawaiʻi Supreme Court has held:

> A plaintiff may recover for [NIED], absent any physical manifestation of his or her psychological injury or actual physical presence within a zone of danger, where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case. . . . Thus, an NIED claim is nothing more than a negligence claim in which the alleged actual injury is wholly psychic and is analyzed utilizing ordinary negligence principles.
>      Further, this court has 'consistently held, as a general matter, that the plaintiff must establish some predicate injury either to property or to another person in order himself or herself to recover for [NIED].'

Kahoʻohanohano v. Dep't of Human Serv., 117 Hawaiʻi 262, 306-07,

178 P.3d 538, 582-83 (2008) (citing <u>Doe Parents No. 1 v. Dept. of Educ.</u>, 100 Hawai'i 34, 69, 58 P.3d 545, 580 (2002)) (alteration in original) (internal citations omitted).

Although the general rule is that there must be a physical injury to someone, the Hawai'i Supreme Court has carved out exceptions to that general rule in certain cases that present "unique circumstances, which provide the requisite assurance that plaintiff's psychological distress is trustworthy and genuine." <u>Doe Parents No. 1</u>, 100 Hawai'i at 69-70, 58 P. 2d at 580-81 (explaining "the law as it currently stands in Hawai'i is that an NIED claimant must establish, incident to his or her burden of proving actual injury (i.e., the fourth element of a generic negligence claim), that <u>someone</u> was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else.")(internal citations omitted, emphasis in original); <u>see also</u> <u>Kaho'ohanohano</u>, 117 Hawai'i at 308, 178 P.3d at 538 (holding that "to recover for NIED, [plaintiff] was required to establish some predicate injury to property or to another person; his physical presence and witnessing of [that] injury is not required.")

Here, Plaintiff alleges "[a]s a direct result of using LineageII and defendants' acts and omissions, plaintiff has suffered extreme and serious emotional distress and depression, and has been unable to function independently in usual daily activities such as getting up, getting dressed, bathing, or

46

communicating with family and friends." Second Am. Compl. ¶ 59.
Plaintiff has further alleged that he was hospitalized for three
weeks and requires treatment and therapy three times a week
because of the Defendants' actions.  See Second Am. Compl. ¶¶ 60-
61.  Accordingly, Plaintiff has adequately pled a "physical
injury" as well as the remaining elements of the claim.  See
supra Section III.D.  If Plaintiff establishes an NIED claim
solely based upon negligence, then damages will be limited by the
User Agreement.  If, however, Plaintiff can establish gross
negligence, and Plaintiff's NIED claim is based on the gross
negligence, then Plaintiff's damages will not be limited.

     G.   Punitive Damages

     Because Plaintiff has adequately pled a claim for gross
negligence, he may have a derivative right to recover punitive
damages.  See Ditto v. McCurdy, 98 Hawai'i 123, 44 P.3d 274,
(2002) ("the proper measurement of punitive damages is the degree
of the defendant's malice, oppression, or gross negligence that
forms the basis for liability for punitive damages"); see also
Durham v. County of Maui, 692 F. Supp. 2d 1256, 1262 (D. Haw.
2010) ("the standard for punitive damages encompasses gross
negligence, which is the 'entire want of care [raising] the
presumption of indifference to consequences") (alteration in
original).  Furthermore, as discussed in greater detail supra, a
claim for gross negligence cannot be waived or subject any
limitation of liability.  See Smith v. Golden Triangle, 708

47

S.W.2d 574, 576 (Tex. App. 1986) (holding that "a term in a release attempting to exempt one from liability or damages occasioned by gross negligence is against public policy.") Accordingly, because punitive damages are a derivative type of recovery based on a gross negligence claim, punitive damages based on such a claim can not be limited by the User Agreement.

Punitive damages, however, cannot form an independent claim and accordingly, the Court dismisses Count VIII. See Ross v. Stouffer Hotel Co., 76 Hawai'i 454, 466, 879 P.2d 1037, 1049 (1994) ("[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action."); Television Events & Mktg., Inc. v. AMCON Distrib. Co., 488 F. Supp. 2d 1071, 1083 (D. Haw. 2006) (dismissing a count alleging "willful, malicious, reckless, and wanton" conduct on the ground that it asserted an independent claim for punitive damages).

## CONCLUSION

For the foregoing reasons, the Court: (1) DENIES Defendants' motion to dismiss for lack of subject matter jurisdiction; (2) GRANTS in part and denies in part Defendants' Motion to Dismiss the Second Amended Complaint, and (3) DISMISSES Counts I (Misrepresentation/Deceit), II (Unfair and Deceptive Trade Practices), VI (Intentional Infliction of Emotional Distress) and VIII (Punitive Damages) of the Second Amended Complaint with prejudice.  Counts III (Defamation/Libel/Slander), IV (Negligence), V (Gross Negligence), and VII (Negligent

48

Infliction of Emotional Distress) of the Second Amended Complaint
remain viable.

      IT IS SO ORDERED.

      DATED: Honolulu, Hawai'i, August 4, 2010.



                           _____
Alan C. Kay
Sr. United States District Judge

Smallwood v. Ncsoft Corp., Civ. No. 09-00497 ACK-BMK: Order Granting in Part and Denying in Part Defendant's Motion to Dismiss the Second Amended Complaint

49